IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOSEPH URBAN,<br>      Plaintiff,<br><br>   v.<br><br>WALGREEN, CO.,<br>      Defendant. | CIVIL ACTION<br><br><br><br>NO. 14-1798 |
|---|---|

MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS

Baylson, J.                                                                                               December 18, 2014

I.   Introduction

Plaintiff Joseph Urban filed this diversity action against Defendant Walgreen Co. alleging wrongful termination based on his refusal to participate in illegal conduct violating the Pennsylvania Pharmacy Code, Medical Assistance regulations, and criminal laws. Urban seeks an injunction prohibiting Walgreen from continuing to discriminate against employees based on their refusal to participate in unlawful activity, compensatory and punitive damages, and costs and attorney's fees. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Walgreen filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Walgreen's motion will be denied.

II.   Facts and Procedural History

Urban's complaint asserts one court of wrongful termination in violation of Pennsylvania public policy against Walgreen. His claim rests on his refusal to participate in allegedly unlawful conduct in violation of the Pennsylvania Pharmacy Code, Medical Assistance regulations, and the statutory and common law. Urban, a former Walgreen pharmacist, claims that after losing a

1

significant portion of its prescription drug business as a result of ending its relationship with Express Scripts Inc., the Walgreen store where he worked began receiving "large numbers" of calls from customers saying they had been notified that Walgreen had refilled their prescriptions without being asked to do so. Am. Compl. ¶¶ 13-16 (ECF 6). According to Urban, health insurance providers require that pharmacies reverse (i.e. cancel out) claims for prescriptions that are not picked up by patients within seven to ten days so that insurers do not pay for prescriptions that are unused or unrequested. Id. ¶¶ 17-20. Some prescriptions have co-pays, which require patients to take the "affirmative step of paying the co-pay" before they can be dispensed. Id. ¶ 21. But other prescriptions have zero co-pays and do not require any patient action before they are dispensed. Id. ¶ 22.

     Urban alleges that in mid- to late-January 2012, contrary to the requirement that pharmacies reverse claims for both co-pay and zero co-pay prescriptions not picked up by patients, his manager instructed him to "segregate all zero co-pay prescriptions [that had not been picked up by patients], to not return them to stock nor reverse the claim, but instead to ring-up the zero co-pay prescriptions on the cash register, attest to consulting or offering to consult during the ring-up, falsely sign if needed for receipt of prescription by patient, attach the register receipt to the prescription bag, place it in a mailing envelope with the patient's name and address on it, seal and leave in bin for mailing." Id. ¶ 23. Urban refused to comply with his manager's request, citing Pennsylvania Pharmacy Code and Medicaid Regulations that prohibit mailing prescriptions without patient request, dispensing prescriptions without offering counseling, and dispensing prescriptions without a patient signature. Id. ¶¶ 25-31. The following day, Urban's manager told him she had spoken to a Walgreen's Vice President named Natasha and a District Supervisor, Jim Reed, and confirmed the new policy was legal, but did not provide written

confirmation of the new policy's legality. Id. ¶ 32-33. Urban again refused to comply, and a few days later his manager instructed him to "merely segregate the zero co-pay prescriptions and place them in a separate bin" for other employees to handle. Id. ¶¶ 34-36. Urban complied and noted that upon returning to work the next day or the following week, the zero co-pay bin sometimes would be empty, presumably because those prescriptions were being mailed to patients. Id. ¶¶ 37-38. About six weeks later, Urban was informed that Walgreen had again changed its policy and was having staff call patients to get authorization before mailing prescriptions. Id. ¶ 40.

On about March 21, 2012, about six weeks after his manager initially directed him to comply with the new prescription policy, Urban was called into a meeting with District Supervisor Reed and the District Loss Prevention Manager, who told him that Walgreen was displeased with his practice of providing customers with cost adjustments. Id. ¶¶ 41-42. Urban responded that he had always been permitted to provide such adjustments, and that these were consistent with his training and left to his discretion as a pharmacist. Id. ¶¶ 43, 50. Urban told Reed in an e-mail that he believed he was being chastised for providing cost adjustments in retaliation for his earlier refusal to comply with the January policy regarding sending prescriptions by mail. Id. ¶ 45. Five days after their initial meeting, Urban met again with Reed and the Loss Prevention Manager and was terminated. Id. ¶¶ 46, 51.

Urban filed his first amended complaint against Walgreen on July 1, 2014 (ECF 6). Walgreen moved to dismiss the complaint for failure to state a claim on July 14, 2014 (ECF 7). Urban filed his opposition to the motion on August 1, 2014 (ECF 9), and Walgreen filed its reply on August 8, 2014 (ECF 10).

**III.	The Parties' Contentions**

In his amended complaint, Urban alleges one count of wrongful termination in violation of public policy enacted by the Pennsylvania Pharmacy Code, Medical Assistance Code,[1] and both civil and criminal law prohibiting fraud and theft by deception. Am. Compl. ¶¶ 53-81 (ECF 6). He claims that by complying with Walgreen's new prescription policy, he would have "aided and abetted Defendant in committing fraud and theft-by-deception against the patients' insurance companies," as these companies would be paying for prescriptions that were never actually requested or picked up by patients. Id. ¶¶ 72, 80. Additionally, Urban argues that he had a statutory duty to comply with various Pennsylvania pharmacy and Medical Assistance regulations as a licensed pharmacist. Id. ¶¶ 70-71, 73-74. Therefore, he claims, Walgreen's conduct falls under the exceptions to the at-will employment doctrine that prohibit an employer from terminating an employee because the employee refused to commit a crime or because the employee complied with a legal obligation. Id. ¶¶ 54-58, 79-80.

Walgreen argues that the Pharmacy Code and Medical Assistance regulations do not implicate a clear mandate of public policy applicable to Urban and are insufficient legal bases for his allegations that he was required to commit a crime. Def.'s Memo. of Law at 9-14 (ECF 7-1). It further claims that Urban was never required to commit a crime, as (1) he was permitted to merely segregate zero co-pay prescriptions instead of mailing them and (2) three out of the four Medical Assistance regulations that Urban cites apply to the Department of Public Welfare, not

---

[1] Pennsylvania's Medical Assistance Code, 55 Pa. Code § 1101.11, et seq., sets out the regulations that apply to Medical Assistance provided through Medicaid under the Commonwealth's federally-approved plan and General Assistance funded solely by state funds. 55 Pa. Code § 1101.21. The parties' briefing in this matter refers at times to "Medicaid Regulations" or "MA regulations," which for purposes of this memorandum are synonymous with "Medical Assistance regulations."

to pharmacists.[2] Id. at 12. According to Walgreen, the final Medical Assistance regulation cited by Urban prohibits enrolled providers from knowingly presenting for payment fraudulent or medically unnecessary claims and is inapplicable in this case because Urban was merely asked to package prescriptions, did not present them for payment, and does not allege he was an "enrolled provider" within the meaning of the statute. Id. at 12-13. Furthermore, Walgreen argues that there is no evidence that any of the prescriptions in question actually belonged to Medical Assistance patients or that Urban was required to submit fraudulent claims to Medical Assistance for medically unnecessary refills. Id. at 13-14. Finally, Walgreen argues that even if Urban had a statutory duty to report this conduct, assuming it violates the law he cites, that statutory duty was not satisfied, as Urban complained only to his manager and not to any higher authority. Id. at 15-16.

Urban counters by arguing that Walgreen mischaracterizes his complaint as one based on retaliation for reporting illegal activity, while the complaint is actually based on retaliation for a refusal to comply with an unlawful directive and violate the law. Pl.'s Memo. of Law at 1, 5 (ECF 9). He contends that his allegations of a statutorily-imposed duty, Walgreen's order to go against this duty, and his refusal to comply are sufficient to fall within an exception to at-will employment doctrine. Id. at 10-12. Urban also argues that the Pharmacy Act and Medical Assistance code, as measures enacted in the interest of public health and safety, are well within the ambit of regulations announcing a clear mandate of Pennsylvania public policy and are therefore "sufficient to support a wrongful termination claim." Id. at 13-20. And he reiterates his

---

[2] Plaintiff cites the Medical Assistance code because "he had patients whose prescriptions were paid by Medicaid." See Pl.'s Response at 2 (ECF 9). The first three provisions, §§ 1101.66(a), 1101.73, and 1101.74, give the Department of Public Welfare the power to initiate administrative action against providers, such as pharmacies, that dispense prescriptions that are "unnecessary, inappropriate to patients' health needs or contrary to customary standards of practice" or submit fraudulent claims for payment. 55 Pa. Code §§ 1101.66(a), 1101.73, and 1101.74.

claims that Walgreen directed him to participate in committing fraud and theft-by-deception. Id. at 20-22. Urban concedes that he did not plead facts regarding whether any of the zero co-pay prescriptions he was asked to package actually belonged to Medical Assistance patients. Id. at 24. However, he argues that the court may reasonably infer from the location of the Walgreen pharmacy where he was employed, Allentown, in which nearly nineteen percent of citizens live below the poverty line, that at least some of these prescriptions likely belonged to Medical Assistance patients. Id.

In its reply, Walgreen argues that Urban's discussion of the Pharmacy Act is a straw man and that the provisions of the Pennsylvania Pharmacy Code cited in Urban's complaint are "nothing but guidelines containing no penalty whatsoever for violation." Def.'s Reply Memo. at 2-4 (ECF 10). It also reiterates that several of the Medical Assistance Code provisions cited in Urban's complaint "plainly do not regulate the conduct of Pharmacists" and that Urban has not alleged sufficient facts to make the remaining provision applicable to him. Id. at 4-6. Walgreen also argues that Urban was never asked to engage in criminal conduct and should not be allowed to further amend his complaint. Id. at 7.

**IV.     Standard of Review**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a

6

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) "expounded the pleading standard for 'all civil actions.'" 556 U.S. at 684.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

**V.     Analysis**

Pennsylvania employers reserve the right to terminate at-will employees at any time, for any or no reason, unless the termination violates a "clear mandate of public policy." Geary v. United States Steel Corp., 319 A.2d 174, 180 (Pa. 1974). Courts applying Pennsylvania law "construe[] the public policy exception to at-will employment narrowly, lest the exception swallow the general rule." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003), as amended (Jan. 20, 2004). As a result, to state a claim for wrongful termination, "the employee must point to a clear public policy articulated in the constitution, in legislation, an administrative

regulation, or a judicial decision" and "the stated mandate of public policy . . . must be applicable directly to the employee and the employee's actions." Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 175 (1996). Over time, the limited, case-by-case exceptions to at-will employment that have satisfied these requirements have been grouped into three categories: "An employer (1) cannot require an employee to commit a crime and fire the employee for refusing to do so, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." Fraser, 352 F.3d at 111 (quoting Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. 1998)). Urban's allegations implicate the first two categories, alleging that he was fired for refusing to commit a crime and for complying with his statutorily imposed duties as a pharmacist.

      To survive a motion to dismiss and successfully plead wrongful termination for refusal to commit a crime or refusal to violate a statutory duty, a plaintiff must identify the specific statutes or regulations he or she was asked to violate. See Stoneback v. ArtsQuest, No. 12-cv-3286, 2012 WL 4963624, at *3, *11 (E.D. Pa. Oct. 17, 2012) (holding "[c]onclusory allegations of criminality are patently insufficient" to state a claim under the public policy exception); Zoe v. Impact Sys., Inc., No. 08-cv-1483, 2009 WL 275181, at *4 (M.D. Pa. Feb. 4, 2009) (granting defendant's motion to dismiss after plaintiff referenced generally "Pennsylvania regulations" and "laws of this Commonwealth" as imposing statutory duty). In addition, "Pennsylvania will not recognize a wrongful discharge claim when an at-will employee's discharge is based on a disagreement with management about the legality of a proposed course of action unless the action the employer wants to take *actually* violates the law." Clark v. Modern Grp. Ltd., 9 F.3d 321, 328 (3d Cir. 1993) (emphasis added). Although professionals must balance "dual obligation[s]" to obey state and federal laws, and to abide by their professional code of ethics, if

8

"the act to be performed turns upon a question of judgment, as to its legality or ethical nature, the employer should not be precluded from conducting its business where the profession's opinion is open to question." McGonagle v. Union Fidelity Corp., 556 A.2d 878, 885 (Pa. Super. 1989).

Nonetheless, allegations that an employee was terminated for refusal to engage in specific unlawful conduct are sufficient to state a claim for wrongful termination. Woodson v. AMF Leisureland Ctrs., Inc., 842 F.2d 699, 702 (3d Cir. 1988) (plaintiff terminated for refusal to serve liquor to visibly intoxicated patron); Srebro v. Dunbar Armored, Inc., No. 12-cv-2136, 2013 WL 4016514, at *4 (M.D. Pa. Aug. 6, 2013) (plaintiff allegedly terminated for refusing to violate Pennsylvania vehicle registration and driver licensing requirements); Parexel Int'l Corp. v. Feliciano, No. 04-cv-3798, 2004 WL 2980386, at *1 n.1 (E.D. Pa. Dec. 20, 2004) (counterclaim-plaintiff allegedly terminated for refusing to pirate a website in violation of six Pennsylvania statutes); Sim Kar Lighting Fixture Co. v. Genlyte, Inc., 906 F. Supp. 967, 975-76 (D.N.J. 1995) (counterclaimant allegedly terminated for refusing to perjure himself, which would have violated Pennsylvania law); Levito v. Hussman Food Serv. Co., No. 89-cv-5967, 1990 WL 1426, at *2-3 (E.D. Pa. 1990) (plaintiff allegedly terminated for refusal to participate in illegal kick-back scheme); Hansrote v. Amer Indus. Techs., Inc., 586 F. Supp. 113, 115 (W.D. Pa. 1984) aff'd, 770 F.2d 1070 (3d Cir. 1985) (concluding that Pennsylvania public policy obligates employer not to discharge an employee for refusing to participate in commercial bribery); McNulty v. Borden, Inc., 474 F. Supp. 1111, 1114, 1119-20 (E.D. Pa. 1979) (plaintiff allegedly terminated for refusal to participate in illegal pricing scheme and antitrust violations).

Of particular relevance here, courts have found that an employee's allegations of termination for refusal to participate in a fraudulent billing scheme are sufficient to state a claim for wrongful termination. "No employee should be forced to choose between his or her

9

livelihood and engaging in fraud or other criminal conduct." Brown v. Hammond, 810 F. Supp. 644, 648 (E.D. Pa. 1993). For example, in Godwin v. Visiting Nurse Ass'n Home Health Servs., an employer terminated its bookkeeper-accountant after she refused to prepare false documents in support of the employer's invoices seeking reimbursement from the federal Medicare program for costs that were not reimbursable. 831 F. Supp. 449, 450-54 (E.D. Pa. 1993) aff'd, 39 F.3d 1173 (3d Cir. 1994). Following a bench trial, Judge Katz of this district held that the employee was wrongfully terminated in violation of Pennsylvania public policy. Id. at 453. Similarly, in Brown, a paralegal/secretary alleged she was terminated in part for refusing to bill her time as attorney time. 810 F. Supp. at 646, 648. Judge Waldman of this district held that "[t]o the extent that plaintiff appears to allege that she was also terminated for refusing herself to engage directly in fraudulent billing, her action may proceed." 810 F. Supp. at 648.

Here, Urban alleges that he was terminated, among other reasons, "for refusing to aid and abet the commission of fraud and/or theft-by-deception on insurance companies."[3] Am. Compl. ¶ 80 (ECF 6). In Pennsylvania, the elements of civil fraud include "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Weissberger v. Myers, 90 A.3d 730, 735 (Pa. Super. 2014). Theft by deception is defined to include the intentional obtaining of another's property by creating or reinforcing a false impression, or by preventing another from acquiring information which would affect his judgment of a transaction. 18 Pa. Cons. Stat. Ann. § 3922(a)(1)-(2). In

---

[3] Although not discussed or cited by either party, the Court notes that "insurance fraud" is a criminal offense under Pennsylvania law, 18 Pa. Cons. Stat. Ann. § 4117, and that Urban's factual allegations may support an argument that he was wrongfully terminated for refusing to participate in insurance fraud, as defined in the statute.

addition, the victim of theft by deception must "rel[y] on the false impression created or reinforced by the [perpetrator]." Com. v. Sanchez, 848 A.2d 977, 983 (Pa. Super. 2004).

Taking the factual allegations in Urban's Amended Complaint as true, the Court concludes that Urban has adequately pleaded that he refused to participate in a fraudulent scheme to bill insurance companies for unnecessary or unwanted prescriptions. Walgreen's agents allegedly instructed Urban to ring-up prescriptions not requested or needed by patients, to attest falsely to receipt of the prescriptions by the patients, and to mail these prescriptions to the patients. Am. Compl. ¶¶ 16-23. These actions would have caused Urban to participate in generating claims that insurance providers would have justifiably relied upon. To the extent that these prescriptions did not need to be filled or should have been returned to stock, Urban has alleged that he was directed to participate in an unlawful fraud on insurance providers. The actions that Urban was requested to perform would have created or supported misrepresentations to insurance providers regarding the legitimacy of these claims and induced the insurers to pay Walgreen for these allegedly unjustified claims. The insurers would have relied, in part, on Urban's misrepresentations and suffered economic damage as a result. These allegations fulfill the elements for fraud and theft by deception under Pennsylvania law.

Urban's further allegations—that he refused to participate in this alleged unlawful scheme and that he was terminated as a result—state a claim for wrongful termination. If Urban can prove his allegations are true, a factfinder may conclude that Urban's termination was against Pennsylvania public policy. Godwin, 831 F. Supp. 449 at 453 (holding that employee's termination for refusal to participate in Medicare fraud was wrongful termination in violation of Pennsylvania public policy); Brown, 810 F. Supp. at 648 (denying motion to dismiss employee's claim that she was wrongfully terminated for refusing to engage in billing fraud). Therefore,

Urban has adequately pleaded a claim for wrongful termination in violation of Pennsylvania public policy.

Because Urban has stated a claim that he was wrongfully terminated for refusing to participate in criminal conduct, the Court need not at this time address the parties' additional arguments regarding Urban's claims that he was terminated for complying with the Pennsylvania Pharmacy Code and Medical Assistance regulations.

## VI.     Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF 7) will be denied. An appropriate order follows.

O:\CIVIL 14\14-1798 urban v. walgreen\14cv1798.Memo.MotiontoDismiss.12.16.14.docx